# U. S. BANCORP MORTGAGE CO. *v.* BONNER MALL PARTNERSHIP

No. 93–714.   Argued October 4, 1994—Decided November 8, 1994

SCALIA, J., delivered the opinion for a unanimous Court.

*Brandford Anderson* argued the cause for petitioner. With him on the briefs were *Dale G. Higer* and *David B. Levant.*

*Deputy Solicitor General Kneedler* argued the cause for the United States as *amicus curiae* in support of petitioner. With him on the brief were *Solicitor General Days, Assistant Attorney General Hunger, Ronald J. Mann, Leonard Schaitman,* and *John P. Schnitker.*

*John Ford Elsaesser, Jr.,* argued the cause for respondent. With him on· the brief were *Isaac M. Pachulski, K. John Shaffer,* and *Barbara Buchanan.**

JUSTICE SCALIA delivered the opinion of the Court.

The question in this case is whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought.

I

In 1984 and 1985, Northtown Investments built the Bonner Mall in Bonner County, Idaho, with financing from a bank in that State. In 1986, respondent Bonner Mall Partnership (Bonner) acquired the mall, while petitioner U. S. Bancorp Mortgage Co. (Bancorp) acquired the loan and mortgage from the Idaho bank. In 1990, Bonner defaulted on its real estate taxes and Bancorp scheduled a foreclosure sale.

The day before the sale, Bonner filed a petition under Chapter 11 of the Bankruptcy Code, 11 U. S. C. § 1101 *et seq.,*

---

*Briefs of *amici curiae* were filed for Izumi Seimitsu Kogyo Kabushiki Kaisha et al. by *Herbert H. Mintz, Robert D. Litowitz, Jean Burke Fordis, David S. Forman,* and *William L. Androlia;* and for Trial Lawyers for Public Justice, P. C., by *Jill E. Fisch, Arthur H. Bryant,* and *Leslie A. Brueckner.*

in the United States Bankruptcy Court for the District of Idaho. It filed a reorganization plan that depended on the "new value exception" to the absolute priority rule.[1] Bancorp moved to suspend the automatic stay of its foreclosure imposed by 11 U. S. C. § 362(a), arguing that Bonner's plan was unconfirmable as a matter of law for a number of reasons, including unavailability of the new value exception. The Bankruptcy Court eventually granted the motion, concluding that the new value exception had not survived enactment of the Bankruptcy Code. The court stayed its order pending an appeal by Bonner. The United States District Court for the District of Idaho reversed, *In re Bonner Mall Partnership*, 142 B. R. 911 (1992); Bancorp took an appeal in turn, but the Court of Appeals for the Ninth Circuit affirmed, *In re Bonner Mall Partnership*, 2 F. 3d 899 (1993).

Bancorp then petitioned for a writ of certiorari. After we granted the petition, 510 U. S. 1039 (1994), and received briefing on the merits, Bancorp and Bonner stipulated to a consensual plan of reorganization, which received the approval of the Bankruptcy Court. The parties agreed that confirmation of the plan constituted a settlement that mooted the case. Bancorp, however, also requested that we exercise our power under 28 U. S. C. § 2106 to vacate the judgment of the Court of Appeals. Bonner opposed the motion. We set the vacatur question for briefing and argument. 511 U. S. 1002–1003 (1994).

## II

Respondent questions our power to entertain petitioner's motion to vacate, suggesting that the limitations on the judi-

---

[1] As described by the Court of Appeals for the Ninth Circuit, the new value exception "allows the shareholders of a corporation in bankruptcy to obtain an interest in the reorganized debtor in exchange for new capital contributions over the objections of a class of creditors that has not received full payment on its claims." *In re Bonner Mall Partnership*, 2 F. 3d 899, 901 (1993). We express no view on the existence of such an exception under the Bankruptcy Code.

cial power conferred by Article III, see U. S. Const., Art. III, § 1, "may, at least in some cases, *prohibit* an act of vacatur when no live dispute exists due to a settlement that has rendered a case moot." Brief for Respondent 21 (emphasis in original).

The statute that supplies the power of vacatur provides:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U. S. C. § 2106.

Of course, no statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy. For that purpose, a case must exist at all the stages of appellate review. *Preiser* v. *Newkirk,* 422 U. S. 395, 401 (1975); *Mills* v. *Green,* 159 U. S. 651, 653 (1895). But reason and authority refute the quite different notion that a federal appellate court may not take any action with regard to a piece of litigation once it has been determined that the requirements of Article III no longer are (or indeed never were) met. That proposition is contradicted whenever an appellate court holds that a district court lacked Article III jurisdiction in the first instance, vacates the decision, and remands with directions to dismiss. In cases that become moot while awaiting review, respondent's logic would hold the Court powerless to award costs, *e. g., Heitmuller* v. *Stokes,* 256 U. S. 359, 362–363 (1921), or even to enter an order of dismissal.

Article III does not prescribe such paralysis. "If a judgment has become moot [while awaiting review], this Court may not consider its merits, but may make such disposition of the whole case as justice may require." *Walling* v. *James*

*V. Reuter, Inc.,* 321 U. S. 671, 677 (1944). As with other matters of judicial administration and practice "reasonably ancillary to the primary, dispute-deciding function" of the federal courts, *Chandler* v. *Judicial Council of Tenth Circuit,* 398 U. S. 74, 111 (1970) (Harlan, J., concurring in denial of writ), Congress may authorize us to enter orders necessary and appropriate to the final disposition of a suit that is before us for review. See *Mistretta* v. *United States,* 488 U. S. 361, 389–390 (1989); see also *id.,* at 417 (SCALIA, J., dissenting).

### III

The leading case on vacatur is *United States* v. *Munsingwear, Inc.,* 340 U. S. 36 (1950), in which the United States sought injunctive and monetary relief for violation of a price control regulation. The damages claim was held in abeyance pending a decision on the injunction. The District Court held that the respondent's prices complied with the regulations and dismissed the complaint. While the United States' appeal was pending, the commodity at issue was decontrolled; at the respondent's request, the case was dismissed as moot, a disposition in which the United States acquiesced. The respondent then obtained dismissal of the damages action on the ground of res judicata, and we took the case to review that ruling. The United States protested the unfairness of according preclusive effect to a decision that it had tried to appeal but could not. We saw no such unfairness, reasoning that the United States should have asked the Court of Appeals to vacate the District Court's decision before the appeal was dismissed. We stated that "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *Id.,* at 39. We explained that vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, re-

view of which was prevented through happenstance." *Id.*, at 40. Finding that the United States had "slept on its rights," *id.*, at 41, we affirmed.

The parties in the present case agree that vacatur must be decreed for those judgments whose review is, in the words of *Munsingwear*, " 'prevented through happenstance' "—that is to say, where a controversy presented for review has "become moot due to circumstances unattributable to any of the parties." *Karcher* v. *May*, 484 U. S. 72, 82, 83 (1987). They also agree that vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court. The contested question is whether courts should vacate where mootness results from a settlement. The centerpiece of petitioner's argument is that the *Munsingwear* procedure has already been held to apply in such cases. *Munsingwear*'s description of the "established practice" (the argument runs) drew no distinctions between categories of moot cases; opinions in later cases granting vacatur have reiterated the breadth of the rule, see, *e. g.*, *Great Western Sugar Co.* v. *Nelson*, 442 U. S. 92, 93 (1979) *(per curiam);* and at least some of those cases specifically involved mootness by reason of settlement, see, *e. g.*, *Lake Coal Co.* v. *Roberts & Schaeffer Co.*, 474 U. S. 120 (1985) *(per curiam).*

But *Munsingwear*, and the post-*Munsingwear* practice, cannot bear the weight of the present case. To begin with, the portion of Justice Douglas' opinion in *Munsingwear* describing the "established practice" for vacatur was dictum; all that was needful for the decision was (at most) the proposition that vacatur should have been sought, not that it necessarily would have been granted. Moreover, as *Munsingwear* itself acknowledged, see 340 U. S., at 40, n. 2, the "established practice" (in addition to being unconsidered) was not entirely uniform, at least three cases having been dismissed for mootness without vacatur within the four Terms preceding *Munsingwear*. See, *e. g.*, *Schenley Distilling Corp.* v. *Anderson*, 333 U. S. 878 (1948) *(per curiam).*

Nor has the post-*Munsingwear* practice been as uniform as petitioner claims. See, *e. g.*, *Allen & Co.* v. *Pacific Dunlop Holdings, Inc.*, 510 U. S. 1160 (1994); *Minnesota Newspaper Assn., Inc.* v. *Postmaster General*, 488 U. S. 998 (1989); *St. Luke's Federation of Nurses and Health Professionals* v. *Presbyterian/St. Lukes Medical Center*, 459 U. S. 1025 (1982).[2] Of course all of those decisions, both granting vacatur and denying it, were *per curiam*, with the single exception of *Karcher* v. *May, supra*, in which we declined to vacate. This seems to us a prime occasion for invoking our customary refusal to be bound by dicta, *e. g.*, *McCray* v. *Illinois*, 386 U. S. 300, 312, n. 11 (1967), and our customary skepticism toward *per curiam* dispositions that lack the reasoned consideration of a full opinion, see *Edelman* v. *Jordan*, 415 U. S. 651, 670–671 (1974). Today we examine vacatur once more in the light shed by adversary presentation.

The principles that have always been implicit in our treatment of moot cases counsel against extending *Munsingwear* to settlement. From the beginning we have disposed of moot cases in the manner " 'most consonant to justice' . . . in view of the nature and character of the conditions which have caused the case to become moot." *United States* v. *Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U. S. 466, 477–478 (1916) (quoting *South Spring Hill Gold Mining Co.* v. *Amador Medean Gold Mining Co.*, 145 U. S. 300, 302 (1892)). The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action. See *Hamburg-Amerikanische, supra*, at 478 (remanding a moot case for dismissal because "the ends of justice exact

---

[2] The Solicitor General, who has filed an *amicus* brief in support of petitioner, would apparently distinguish these unvacated cases on the ground that the dismissal was pursuant to this Court's Rule 46.1 (or its predecessor), which provides for dismissal when "all parties . . . agre[e]." But such an exception to vacatur for mootness is not mentioned in *Munsingwear;* nor, we may add, do we see any reason of policy to commend it.

that the judgment below should not be permitted to stand when without any fault of the [petitioner] there is no power to review it upon the merits"); *Heitmuller* v. *Stokes*, 256 U. S., at 362 (remanding for dismissal because "without fault of the plaintiff in error, the defendant in error, after the proceedings below, . . . caus[ed] the case to become moot").

The reference to "happenstance" in *Munsingwear* must be understood as an allusion to this equitable tradition of vacatur. A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.[3] See *Hamburg-Amerikanische, supra,* at 477–478. The same is true when mootness results from unilateral action of the party who prevailed below. See *Walling*, 321 U. S., at 675; *Heitmuller, supra,* at 362. Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that "[a] suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Sanders* v. *United States*, 373 U. S. 1, 17 (1963) (citing *Fay* v. *Noia*, 372 U. S. 391, 438 (1963)).

In these respects the case stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all. In *Karcher* v. *May, supra,* two state

---

[3] We thus stand by *Munsingwear*'s dictum that mootness by happenstance provides sufficient reason to vacate. Whether that principle was correctly applied to the circumstances of that case is another matter. The suit for injunctive relief in *Munsingwear* became moot on appeal because the regulations sought to be enforced by the United States were annulled by Executive Order. See *Fleming* v. *Munsingwear, Inc.,* 162 F. 2d 125, 127 (CA8 1947). We express no view on *Munsingwear*'s implicit conclusion that repeal of administrative regulations cannot fairly be attributed to the Executive Branch when it litigates in the name of the United States.

legislators, acting in their capacities as presiding officers of the legislature, appealed from a federal judgment that invalidated a state statute on constitutional grounds. After the jurisdictional statement was filed the legislators lost their posts, and their successors in office withdrew the appeal. Holding that we lacked jurisdiction for want of a proper appellant, we dismissed. The legislators then argued that the judgments should be vacated under *Munsingwear*. But we denied the request, noting that "[t]his controversy did not become moot due to circumstances unattributable to any of the parties. The controversy ended when the losing party— the [State] Legislature—declined to pursue its appeal. Accordingly, the *Munsingwear* procedure is inapplicable to this case." *Karcher*, 484 U. S., at 83. So, too, here.

It is true, of course, that respondent agreed to the settlement that caused the mootness. Petitioner argues that vacatur is therefore fair to respondent, and seeks to distinguish our prior cases on that ground. But that misconceives the emphasis on fault in our decisions. That the parties are jointly responsible for settling may in some sense put them on even footing, but petitioner's case needs more than that. Respondent won below. It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been.

As always when federal courts contemplate equitable relief, our holding must also take account of the public interest. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S.*

*Philips Corp.*, 510 U. S. 27, 40 (1993) (STEVENS, J., dissent-
ing). Congress has prescribed a primary route, by appeal
as of right and certiorari, through which parties may seek
relief from the legal consequences of judicial judgments. To
allow a party who steps off the statutory path to employ the
secondary remedy of vacatur as a refined form of collateral
attack on the judgment would—quite apart from any consid-
erations of fairness to the parties—disturb the orderly oper-
ation of the federal judicial system. *Munsingwear* estab-
lishes that the public interest is best served by granting
relief when the demands of "orderly procedure," 340 U. S.,
at 41, cannot be honored; we think conversely that the public
interest requires those demands to be honored when they
can.

Petitioner advances two arguments meant to justify vaca-
tur on systemic grounds. The first is that appellate judg-
ments in cases that we have consented to review by writ of
certiorari are reversed more often than they are affirmed,
are therefore suspect, and should be vacated as a sort of
prophylactic against legal error. It seems to us inappropri-
ate, however, to vacate mooted cases, in which we have no
constitutional power to decide the merits, on the basis of
assumptions about the merits. Second, petitioner suggests
that "[v]acating a moot decision, and thereby leaving an issue
. . . temporarily unresolved in a Circuit, can facilitate the
ultimate resolution of the issue by encouraging its continued
examination and debate." Brief for Petitioner 33. We have
found, however, that debate *among* the courts of appeals suf-
ficiently illuminates the questions that come before us for
review. The value of additional intracircuit debate seems to
us far outweighed by the benefits that flow to litigants and
the public from the resolution of legal questions.

A final policy justification urged by petitioner is the facili-
tation of settlement, with the resulting economies for the
federal courts. But while the availability of vacatur may
facilitate settlement after the judgment under review has

been rendered and certiorari granted (or appeal filed), it may *deter* settlement at an earlier stage. *Some* litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur. And the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal. We find it quite impossible to assess the effect of our holding, either way, upon the frequency or systemic value of settlement.

Although the case before us involves only a motion to vacate, by reason of settlement, the judgment of a court of appeals (with, of course, the consequential vacation of the underlying judgment of the district court), it is appropriate to discuss the relevance of our holding to motions at the court-of-appeals level for vacatur of district-court judgments. Some opinions have suggested that vacatur motions at that level should be more freely granted, since district-court judgments are subject to review as of right. See, *e. g.*, *Manufacturers Hanover Trust Co.* v. *Yanakas*, 11 F. 3d 381, 384 (CA2 1993). Obviously, this factor does not affect the primary basis for our denying vacatur. Whether the appellate court's seizure of the case is the consequence of an appellant's right or of a petitioner's good luck has no bearing upon the lack of equity of a litigant who has voluntarily abandoned review. If the point of the proposed distinction is that district-court judgments, being subject to review as of right, are more likely to be overturned and hence presumptively less valid: We again assert the inappropriateness of disposing of cases, whose merits are beyond judicial power to consider, on the basis of judicial estimates regarding their merits. Moreover, as petitioner's own argument described two paragraphs above points out, the reversal rate for cases in which this Court grants certiorari (a precondition for our vacatur) is over 50%—more than double the reversal rate for appeals

to the courts of appeals. See Fisch, Rewriting History: The Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur, 76 Cornell L. Rev. 589, 595, n. 25 (1991) (citing studies).

We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed. Of course even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b).

$$* \quad * \quad *$$

Petitioner's motion to vacate the judgment of the Court of Appeals for the Ninth Circuit is denied. The case is dismissed as moot. See this Court's Rule 46.

*It is so ordered.*