**CORRECTED**
**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM J. SONNTAG,
Plaintiff-Appellant,

v.                                                                No. 96-2389

JOHN M. MCCONNELL, Vice Admiral,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-95-1420-S)

Argued: December 4, 1997

Filed: August 27, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and MERHIGE,*
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Dismissed and remanded by unpublished order.

_____

**COUNSEL**

**ARGUED:** George Michael Chuzi, KALIJARVI, CHUZI & NEW-
_____
*Senior Judge Merhige participated in oral argument but retired prior
to the time the order was entered. The decision is filed by a quorum of
the panel pursuant to 28 U.S.C. § 46(d).

MAN, P.C., Washington, D.C., for Appellant. Allen F. Loucks, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Elizabeth L. Newman, KALI-JARVI, CHUZI & NEWMAN, P.C., Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Charles J. Peters, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

**ORDER**

The parties have jointly moved for a dismissal of the instant appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, representing that they have settled their dispute by agreement. There being no remaining controversy, we grant the joint motion to dismiss. For the reasons recited below, we vacate the judgment of the district court and remand with instructions to dismiss the case as moot.

In dismissing this appeal, we believe we would be remiss were we not to express our concern over the conduct of the United States Attorney during the pendency of this appeal. That conduct, which seemingly resulted because the United States Attorney was unwilling to express a view for the United States either in support of or in opposition to the very significant holding of law under review in this court, has left the court with the firm belief that the integrity of its processes have been compromised.

Although the two cases are unrelated, the case before us has proceeded on a schedule roughly parallelling that of Piscataway Township Board of Education v. Taxman, which was to have been argued and decided by the Supreme Court this Term, but which was likewise settled at the eleventh hour.

On June 27, 1997, the Supreme Court granted a writ of certiorari to the United States Court of Appeals for the Third Circuit in Piscataway. 117 S. Ct. 2506 (1997). The question presented in that case was whether, under Title VII of the Civil Rights Act of 1964, race-based affirmative action may permissibly be used in employment decisions for purposes other than remedying past employment discrimination. On September 30, 1997, three months later, we calen-

2

dared oral argument in this case. The question presented in this case, analogous to that presented in Piscataway, was whether, as the district court held, under Title VII of the Civil Rights Act of 1964, race-based affirmative action may permissibly be used in federal government employment decisions without regard to whether such policies are designed to remedy past employment discrimination. The district court in this case held as follows:

> In federal employment, through EO 11478, (pursuant to § 2000e-16(e)) a government employer's duty to follow the Executive Order, overrides any inconsistent provision of § 2000e-16, whether express or borrowed from § 2000e-2. EO 11478 specifically calls upon the head of each federal agency to "establish and maintain an affirmative program of equal employment opportunities." Such a program, as is well and commonly known, takes into account motivating factors traditionally associated with remedying discrimination in employment, such as race, sex, national origin, and the like. In that consideration of these matters is required in federal employment decisions under EO 11478, the "mixed-motive" test of § 2000e-2(m) is flatly inconsistent with the enforcement of EO 11478, and thus, pursuant to § 2000e-16(e), § 2000e-2(m)'s mixed motive test forms no part of § 2000e-16(a)'s prohibited employment practices.

Appendix at 7-8.

In late November of 1997, the Piscataway case was settled when a consortium of interest groups not involved in the litigation paid the Piscataway plaintiff so that the Supreme Court would not decide the issue presented by that appeal. On December 2, 1997, the writ of certiorari in Piscataway was dismissed by the Supreme Court because of that settlement. Two days following the Supreme Court's dismissal of Piscataway, we heard oral argument in the instant appeal.

Notwithstanding the square holding of the district court in this case that an exception to Title VII's nondiscrimination mandate exists for race- and sex-based affirmative action within the federal government by virtue of Executive Order 11478, the United States Attorney did not brief or argue this issue. Indeed, in her brief, the United States

3

Attorney never even recited the district court's holding, saying only that:

> The district court rendered its decision on grounds not raised by the agency in its motion for summary judgment. The agency will be requesting this Court affirm the granting of the motion on the alternative grounds asserted on the record by the agency below.

Appellee's Br. at 8. However, at the same time that the United States Attorney never mentioned the district court's holding, she noticeably did not confess that the district court's holding was in error (in fact, as noted below, when forced, she asserted, albeit conclusorily, that the relevant agency's affirmative action program is consistent with both Executive Order 11478 and the Constitution). Rather, she argued only that there was insufficient evidence upon which to conclude that considerations of race or sex played a role in the particular disputed employment decision.

The district court had categorically rejected the argument that there was insufficient evidence to support a conclusion that the employment decision was based upon race and/or sex. And this court believed that the government's argument that there was no evidence that these factors underlay the decision was frivolous, if not disingenuous. Plaintiff Sonntag proffered a mountain of direct evidence establishing to a virtual certainty that the contested employment decision was motivated by race- and sex-based affirmative action: the manager who made the disputed employment decision was widely known to have an aggressive affirmative action agenda that was particularly geared to promoting women and Hispanics; plaintiff-appellant was passed over for an Hispanic woman; there were dozens of statements from upper-level management officials testifying that the employment decision was motivated by race- and sex-based affirmative action; and there was a written memorandum from the manager most involved with the contested employment decision stating that the decision was motivated by the desire to enhance the racial and sexual diversity of the workforce by promoting an Hispanic woman. Plaintiff's Opp. at 13-14. See also Plaintiff's Opp. at 11 (member of the career development board stating "[w]as it an attempt at Affirmative Action? Yes!") (emphasis added); Appendix at 50-51 (head of division who ratified

4

the employment selection saying that "the Affirmative Action candidate should receive extra consideration and may be the best choice even if one of the others may have more `tickets' on their record," and saying of this particular case, "[t]he Hispanic female selection was influenced by Affirmative Action and we are encouraged to be mindful of EEO.").

Accordingly, while we did not know whether we would ultimately rest our decision on the specific ground upon which the district court judgment rested, at argument the court was interested in the district court's holding of law that Executive Order 11478 creates an exception to Title VII's nondiscrimination requirement, and, if so, whether such was constitutional. In particular, we were interested in the views of the United States Attorney and appellant as to this ground of decision.

At argument, the court asked both parties their views on the question of whether Executive Order 11478 created the exception to Title VII which the district court held that it did. The Assistant United States Attorney simply refused to address the issue, stating that he had been ordered "in no uncertain terms" by his"masters" not to discuss this ground of decision with the court. Counsel for appellant similarly would not address himself to the issue.

When, after extended discussion with both counsel, it became awkwardly apparent to the court (and, we sensed, to counsel themselves) that neither attorney would address the district court's principal holding absent a direct order to do so, the court entered an order from the bench that additional briefing and, if necessary, supplementation of the record, be submitted on the issues the court believed might be relevant to a review of the district court's holding. Specifically, the court ordered initial briefing from the United States Attorney on whether, at the time of the employment decision at issue, the agency had in effect an official affirmative action program promulgated pursuant to Executive Order No. 11478, and if so, whether that policy was consistent with the Executive Order, Title VII, and the Constitution itself. This order, as had been our original request, was met by what can only be characterized as a suspiciously unyielding opposition from the United States Attorney. In fact, a not inconsiderable amount of

5

argument time was consumed by counsel's effort to prevent the court even from directing that this issue be briefed.

Although the court initially ordered this supplemental briefing within ten days, the United States Attorney expressed doubt that the office could comply with that schedule. The court, consequently, afforded the United States Attorney two weeks within which to submit the requested briefing, and, that same day, the Clerk of the Court issued the order requiring that the "supplemental brief . . . be served and filed on or before December 18, 1997."

The United States Attorney did not file supplemental briefing on December 18, as ordered. Rather, on that date, she filed a motion for a further extension of time within which to file the supplemental brief, on the asserted grounds that counsel were too busy to comply with this court's order and were "still in the process of locating and verifying what, if any, affirmative action plan was in effect at the time of the employment decision in this case." Reaffirming the court's suspicions that the United States Attorney in particular was intent upon preventing the court from addressing the question presented by the district court's ruling, the United States Attorney once again urged that we reconsider our earlier order of supplemental briefing, contending that briefing on the district court's specific holding was "not necessary to the appeal at hand."

Although displeased with the United States Attorney's continued intransigence, the court nonetheless granted the motion for a further extension -- an extension of approximately a month from the date on which the briefing was originally due -- such appearing to be the only course by which the court could obtain the government's views on the relevant issue. In its order, however, the court made clear to the United States Attorney that her brief was to be"served and filed in this court on or before January 15, 1998." Intending to convey what was our mounting displeasure with the United States Attorney, we pointedly warned in our Order of December 31, 1997, that her "failure to comply with this extended deadline may subject counsel and/or the government to penalty under Federal Rule of Appellate Procedure and Local Rule."

Late in the day of January 15, 1998, the United States Attorney's supplemental brief had yet to be received by the court.

At the court's instruction, the Clerk contacted the United States Attorney to ascertain why the supplemental brief had not been filed. During this telephone call, the United States Attorney informed the Clerk that the brief had been mailed from Baltimore earlier that day, but obviously would not arrive at the Fourth Circuit Court of Appeals in Richmond for several days. The Clerk informed the United States Attorney that the mailing that day would be regarded as noncompliance with the December 31 order, and, again at our direction, expressed the court's displeasure with the additional delay. The Clerk suggested that the United States Attorney move for another extension of time within which to file the brief.

On January 16, 1998, one day after the twice-modified supplemental briefing deadline had elapsed and the United States Attorney had learned of the court's displeasure with the additional delay in filing the supplemental brief, the United States Attorney filed two motions with the court. Both motions, it appears, were hand delivered from Baltimore, Maryland, to the Court of Appeals in Richmond, Virginia, as they were both signed by counsel and filed with the Clerk of the Court that same day. The first motion was for another extension of time within which to file the supplemental brief. The second motion, however, was a joint motion to dismiss the appeal pursuant to Federal Rule of Appellate Procedure 42(b) on the ground that the parties had agreed to settle the case. Contrary to the requirements of Rule 42(b), the joint motion did not set forth "the terms as to payment of costs," but merely represented that the "settlement agreement makes arrangements for the parties' costs." Further, while Rule 42(b) and Local Rule 42 require that a motion to dismiss be signed at least by counsel for both parties (Local Rule 42), if not by the parties themselves (FRAP 42(b)), see also Order of January 26, 1996 in Blistein v. St. John's College, No. 94-2223 (4th Cir.) (declining to accept joint stipulation of dismissal where defendant's counsel signed plaintiff's name with permission to do so), the joint motion is signed by the United States Attorney on behalf of both the government and the plaintiff, albeit in the latter behalf with the plaintiff's counsel's permission. That is, although a signature bearing the name of counsel for plaintiff-appellant appears on the motion, that signature was affixed "with permission" by the United States Attorney. The joint stipulation had every indicia of having been hastily prepared.

7

Several days later, the court finally received through the mail the ordered supplemental briefing from the United States Attorney on the substantial questions of federal law presented by the district court's holding. That brief was less than eight double-spaced pages of perfunctory text. The brief included no analysis of the legal issues whatsoever. Nor did it include any application of legal principles to the case at hand. The brief literally recited only three sentences specific to the issues raised by the application of law to fact in this particular case, and these three sentences were entirely conclusory. See Appellee's Br. at 2 ("The government submits that the affirmative action plan is consistent with Executive Order No. 11478"); id. at 3-4 ("The government submits that the affirmative action plan is consistent with equal protection"); id. at 6 ("The government has an interest in the advancement of minorities, as reflected in the Executive Order and as reflected in the statistics contained in the affirmative action plan itself.").

* * *

From the foregoing sequence of events, the court has come away with the clear impression that the integrity of the judicial process has been compromised by considerations that apparently forced upon the United States Attorney a choice between allegiance to politics and service to the court.

Either of these parties -- the United States or appellant -- was entitled to settle this dispute following the district court's decision and before this appeal. Once the decision was appealed, the attorneys for the parties were entitled to present their cases in any manner they chose, consistent with their obligation to zealously represent their respective clients and with their obligation to the court not to advance arguments they knew to be frivolous. Although certainly unorthodox, we suppose it was even within their discretion not to address the very ground upon which the district court's judgment rested.

However, once the court expressed its interest in the views of the United States as to the issue not addressed by the government -- the specific ground for the district court's decision-- the United States Attorney had an affirmative obligation to assist the court to the best of her ability, by promptly providing the court with the information

8

that the court had concluded would assist it in the consideration of this issue. It is plain to the court that the United States Attorney failed to accept and fulfill this obligation.

The United States Attorney had, as noted, not even so much as mentioned, much less addressed, the district court's holding in her brief, urging affirmance of the judgment below on such a baseless ground as to call into question her good faith in advancing the argument, rather than have the district court's holding reviewed by this court. When asked by this court to address herself to the district court's holding, the United States Attorney categorically refused, the Assistant United States Attorney revealing to the court that he had been ordered by his "masters" not to address the question. When finally ordered by the court to brief the issue, the United States Attorney delayed and delayed. When ultimately forced to brief the issue upon threat of sanctions, the submitted brief not only did not address the substantive issues, but, in its perfunctoriness, evidenced almost a contemptuousness toward the court.

And, in the end, when it must have appeared to the United States Attorney that her efforts at preventing review of the district court's holding were failing, she was even willing to settle the dispute entirely rather than permit this court to review the district court's decision -- a settlement that, from the apparent haste with which it was reached and consummated, itself raises questions as to whether the public's interests, as opposed to the parochial political interests evidently at stake, could possibly have been served.

The uncomfortable sense that the rule of law was sacrificed to politics is all but inescapable.

The United States Attorney having mooted this appeal through settlement with the plaintiff, the joint motion for dismissal pursuant to Federal Rule of Appellate Procedure 42(b) is granted. Because the court concludes that the public interest requires that none should benefit from an opinion which, were it not for the apparent gaming of the judicial process that occurred, would have been superseded by an opinion from this court in the ordinary course, the case is hereby remanded with instructions to the district court to vacate as moot both its judgment and opinion. See 28 U.S.C. § 2106; U.S. Bancorp Mort-

9

gage Co. v. Bonner Mall Partnership, 513 U.S. 18, 26 (1994) (noting that vacatur is appropriate where public interest demands); cf. id. at 29 (noting that "extraordinary circumstances" may, even at parties' request, justify vacatur of district court opinion upon dismissal because of settlement).

It is so ordered.