**Melissa EVANS, Plaintiff,**

v.

**Jayson Kendell MULLINS, et al., Defendants.**

**No. 2:00CV00048.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Jan. 29, 2001.

---

Anthony E. Collins, Anthony E. Collins, P.C., Wise, VA, for Melissa Evans.

Henry S. Keuling-Stout, Keuling-Stout, P.C., Big Stone Gap, VA, for Jayson Kendell Mullins, Eugene Yates, Town of Clintwood.

## OPINION

JONES, District Judge.

In this § 1983 case in which a jury found the defendant police officers liable for using excessive force in their arrest of the plaintiff, I deny the parties' joint motion to have the jury verdict set aside and judgment vacated pursuant to a post-verdict settlement agreement.

## I

This case was brought under 42 U.S.C.A. § 1983 (West 1994 and Supp. 2000). The plaintiff,. Melissa Evans, claimed that the defendants, Jayson Kendell Mullins and Eugene Yates, used excessive force when they arrested her on October 31, 1998, violating her right to freedom from unreasonable search and seizure as guaranteed by the Fourth Amendment. After a trial in this court on January 9 and 10, 2001, the jury returned a verdict finding that both defendants used excessive force in arresting the plaintiff, and that they both committed an assault and battery against her. The jury awarded the plaintiff damages in the amount of $15,000, and pursuant to Federal Rule of Civil Procedure 58 judgment was entered in favor of the plaintiff in that amount on January 11, 2001.

On January 12, 2001, the parties submitted a joint motion to have the jury verdict "set aside and [to have] no judgment go down against the defendants on the basis that the parties have now come to a voluntary settlement of their differences." The motion is ripe for decision.[1]

## II

The issue of whether a district court's final judgment should be set aside through vacatur due to a post-judgment settlement between the parties has been widely debated. See, e.g., Jill E. Fisch, *Rewriting History: The Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur*, 76 Cornell L.Rev. 589 (1991); Michael W. Loudenslager, *Erasing the*

---

1. The parties have not relied upon any particular procedural rule in their motion. Rule 60(b)(5) authorizes the court to relieve a party from a judgment that has been "satisfied, released, or discharged," Fed.R.Civ.P. 60(b)(5), but the parties desire significantly more than that—they wish the court to enter a new judgment setting aside the verdict and dismissing the action as settled. Rule 60(b)(6) provides that a district court may relieve a party from a final judgment for "any

... reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). In addition, a motion under Rule 59(e) allows the court to alter or amend a judgment, which has been construed to permit a motion to vacate a judgment. See Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Regardless of which rule is considered, however, the underlying principles applied here ought to be the same.

*Law: The Implications of Settlements Conditioned Upon Vacatur or Reversal of Judgments,* 50 Wash. & Lee L.Rev. 1229 (1993). The circuits are split in their approaches to the issue, ranging from a policy of always granting such motions, *see, e.g., Nestle Co. v. Chester's Market, Inc.,* 756 F.2d 280 (2d Cir.1985), to always denying such motions, *see, e.g., In re Mem'l Hosp., Inc.,* 862 F.2d 1299 (7th Cir.1988), to applying a case-by-case balancing approach, *see Nat'l Union Fire Ins. Co. v. Seafirst Corp.,* 891 F.2d 762 (9th Cir.1989). While the Fourth Circuit has not adopted one of these approaches to the issue, it has recognized that a district court's decision whether to vacate its own judgment is equitable in nature, and that there is a general presumption against vacatur. *See Valero Terrestrial Corp. v. Paige,* 211 F.3d 112, 118 (4th Cir.2000). The *Valero* court noted that a district court facing a vacatur motion may consider, among other factors, "considerations of relative fault and public interest." *Id.* After considering the interests of both the parties involved and the public, I do not find that vacatur is warranted in this case.

The parties in this case share an interest in their desire for settlement. Indeed, this circuit has recognized that "resolution is not infrequently accomplished by the party litigants themselves through agreement and settlement before, during or even after litigation. In the achievement of such settlement, the parties are, or should be, encouraged." *Consol. Gas Supply Corp. v. Fed. Energy Regulatory Comm'n,* 745 F.2d 281, 283 (4th Cir.1984). To the extent that settlement is conditioned upon vacatur of the judgment, however, the interests of the public are implicated. The Supreme Court has noted that judicial decisions "are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 26, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993)). Therefore, I must weigh the parties' interest in settlement against the interests of the public in letting the judgment stand.

While it is true that there is a strong policy in favor of encouraging settlements, that interest is not necessarily served by granting vacatur pursuant to the settlement agreement in this case. Judicial economy is not achieved where, as here, the time and resources attendant to bringing a trial to fruition have already been spent, only to be undone because the parties have settled at the end of the day. As the Supreme Court has recognized, "[s]ome litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court ... if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur." *U.S. Bancorp Mortgage Co.,* 513 U.S. at 28, 115 S.Ct. 386. In other words, if post-judgment vacatur were a readily available option, parties would be less likely to settle at earlier stages of the controversy. Thus, the parties' interest in the private settlement of their dispute is not strong in this case, because of the disincentive their position creates for prejudgment settlements.

I am advised by counsel for the parties that the impetus for the joint motion for vacatur is an effort to protect one of the defendants from losing his job in law enforcement as a result of the adverse jury verdict. This interest, while important, does not persuade me to vacate the jury's verdict of liability. The defendant's employer is not bound by the jury's decision in this case, and is free to evaluate the incident according to its own standards and sensibilities. Even if I were to grant the vacatur motion, it would still be true that the jury found in favor of the plaintiff. The fact that the parties have reached an agreement does not undermine the constitutional wrongs found by the jury. I will not through vacatur create a false impression to the defendants, the defendants' em-

ployers, or the public at large that I have doubts as to the legal validity of the jury's verdict.

The public's interests in letting the verdict stand are manifold. First, as discussed above, the public has an interest in judicial economy, a goal that is not served by the court's compliance with the settlement terms proffered here. Judicial resources were dedicated to the formal resolution of this dispute, including a jury of the parties' peers who spent two days carefully listening to the evidence and deliberating to reach a verdict. To allow the parties' post-judgment settlement to effectively render the trial fruitless would undermine the legal process.

The public also has an interest in the finality of judgment. It has been held that

> [w]hen a clash between genuine adversaries produces a precedent, ... the judicial system ought not allow the social value of that precedent, created at cost to the public and other litigants, to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property.

*In re Memorial Hosp., Inc.*, 862 F.2d at 1302. Although a jury verdict alone has little or no precedential value, the integrity of all decisions in this court would be weakened by allowing unsuccessful parties to erase unfavorable legal outcomes simply by striking a deal with the other side after the fact. The social value of this judgment, in particular, is amplified by the nature of the case as a constitutional claim. "The Constitution often protects interests broader than those of the party seeking their vindication." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Here, the jury's finding that the defendants, who were government officials, used excessive force in arresting the plaintiff is a public statement that serves to deter future misconduct "under color of state law." 42 U.S.C.A. § 1983.

Additionally, the public has an interest in the integrity of the judiciary. Society would not be served by the impression that the court is beholden to the will of the parties, acting in accordance with their private agreements. The court's duty "lies not in the direction of an automatic acquiescence to the parties' request, but rather with a deliberate consideration of the policy that will best serve the public good." *Clarendon Ltd. v. Nu-West Indus., Inc.*, 936 F.2d 127, 129 (3d Cir.1991). The independence of the judiciary would be compromised if courts routinely struck their own decisions because the parties involved were displeased with the final outcome.

After consideration of the equities, the presumption against vacatur has not been overcome. I conclude that the public's interest in judicial economy, finality of judgment, and the integrity of the courts outweighs the parties' interest in having the verdict vacated.

### III

For the foregoing reasons, an order will be entered denying the parties' joint motion.