WILKINSON, Circuit Judge,
dissenting:
I appreciate the conscientious attention that my good colleagues have devoted to this case, but I do not understand the rush to send an unnecessary signal that the release of a serial child sex offender here was appropriate. Given the hurdles the majority must clear to reach the finish line of an affirmance, the district court would be well within its rights to conclude that *548 the case is now for all intents and purposes over, and that the latest evidence of Springer’s condition and impaired volitional control is all but irrelevant. Though we may never learn the consequences of a poor predictive judgment on our part, I fear that some young child somewhere will experience them. The matter was on the edge before the latest evidence, and we should at least ask the trial court to take a fresh and careful look at what my friends in the' majority must recognize is a very troubling case.
I do appreciate the personal liberty interests at stake here, and I do understand the view my colleagues take, namely that the district court is better positioned than are we to evaluate the conflicting testimony in Springer’s case. But that is precisely my point. The district court has not been able to review important evidence in this case. During the pendency of this appeal, it was brought to our attention that Springer violated the terms of his supervised release in two distinct ways within a scant two months after leaving prison. First, Springer violated the condition that he sleep at his group residence every evening. On at least five separate occasions in late 2012, he failed to report to the residence as required. Second, Springer violated the condition that he not associate with any person convicted of a felony. In December 2012, he began an intimate relationship with another convicted sex offender. As a result of this misconduct, Springer was reincarcerated, and the government has formally recertified him as meeting the criteria for civil commitment under the Adam Walsh Act, Pub.L. 109-248, 120 Stat. 587 (2006), following his expected release in November 2013. See 18 U.S.C. § 4248. The district court had no opportunity even to consider Springer’s most recent violations, and its decision on appeal here has been rendered moot by the government’s second certification.
I.
“A case becomes moot — and therefore no longer a ‘Case’ or ‘Controversy’ for purposes of Article III — ‘when the issues presented are no longer “live” or the parties lack a legally cognizable interest in the outcome.’ ” Already, LLC. v. Nike, Inc., — U.S.-, 133 S.Ct. 721, 726-27, 184 L.Ed.2d 553 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam)). Because Springer was reincarcerated in December 2012, no live controversy remains between him and the government with respect to the underlying question now before us: whether he should have been subject to civil commitment following his release from prison in October 2012. The foundation of this case has slipped out from under us. Regardless of any disposition we might issue on the merits here, Springer will remain incarcerated until his current term of imprisonment expires, and the government will have to prove anew at Springer’s next commitment hearing that he meets the requirements for civil commitment under the Adam Walsh Act.
By ruling on the merits of this appeal, we are in dereliction of our duty “to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the ease before [us].” Oil Workers v. Missouri, 361 U.S. 363, 367, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960). Therefore, I would dismiss this appeal as moot and vacate the judgment of the district court, see United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), leaving for another day the question of whether Springer should be com *549 mitted following his actual release.*
II.
Even if this case were somehow not mooted, I would at least remand it and afford the district court an opportunity to revisit its decision near the close of Springer’s most recent reincarceration resulting from his most recent misconduct. Springer’s latest violations are material to the district court’s determination as to his future dangerousness. A central premise of the trial court’s ruling was that Springer is not likely to reoffend because he credibly testified that “he has matured,” “he knows his actions were wrong,” and he “knows ... that he needs help.” J.A. 464-65. The court also noted that “upon his release from custody, Mr. Springer will have a system of checks in place [through supervised release] that may reinforce his own ability to control his sexual impulses.” J.A. 466. In short, the trial court concluded that Springer had left behind whatever impulsive and pedophilic tendencies from which he may have suffered.
The recent violations, however, draw these findings into question. Springer’s failure to comply with the conditions of supervised release — on at least five separate occasions within the first two months of his release — suggests that he still cannot fully control his impulsive behavior or obey legal authority. The condition that Springer sleep at his group residence is important because it limits his ability in the evening to develop the kind of false trust in a minor that often accompanies child sexual abuse. And the fact that he also violated the condition that he not fraternize with another convicted sex offender calls into greater question the conclusion that he has outgrown his prior sexual .tendencies. In short, Springer was told what not to do, and he did it. To be blunt, this does not bode well.
Considering Springer’s lengthy list of convictions for sexual offenses, this is a case that was close even without the latest evidence. (In describing his offenses, I have omitted the more graphic details.)
In 1997, Springer was convicted of sexually abusing the eleven-year old sister of his then-girlfriend. See J.A. 88 (noting that Springer liked the victim “because she was flat-chested; she wasn’t developed”).
That same year, he also pled guilty to third-degree sexual abuse against a thirteen-year old boy. See J.A. 89, 322 (noting that Springer performed oral sex on the victim at least three times and, on one occasion, “grabbed” the victim, “held him down,” “groped his testicles,” and “kissed him”).
In November 2000, following his prison term for the 1997 offenses, Springer committed third-degree sexual abuse by grabbing and molesting a nineteen-year old while she was sleeping. J.A. 231, 240. He pled guilty to that offense. Id.
Several months later, he was convicted of acting in a manner injurious to a child after he offered a thirteen-year old boy money in exchange for an opportunity to photograph the boy naked. See J.A. 86-87 (noting that the victim was the younger brother of someone Springer was dating).
In 2002, Springer was convicted of second-degree sodomy against a seven-year *550 old child. J.A. 242-43. That conduct took place in 1996 and 1997. See ante at 546 (noting that “Springer' engaged in sexual acts with a prepubescent boy over a nine-month period”); see also J.A. 84-85 (indicating that Springer forcibly performed oral sex on the victim multiple times while serving as his babysitter).
Finally, in 2004, he pled guilty to sexual misconduct for engaging in nonconsensual oral and anal sex with a sixteen-year old. J.A. 82-88, 231.
Springer has also been convicted of several other nonsexual offenses, including check fraud, larceny, and failure to comply with sex-offender registration laws. J.A. 230-31.
Since the time of his convictions, Springer has spent about four years in the community without committing a sexual offense. Despite .that seeming progress, however, he “once said in a mental health session [in 2004] that he would not abuse children again unless they really, really wanted him to.” J.A. 136. During the commitment proceedings below, Springer admitted it was “difficult” for him to “refrain[ ]' from having contact with young children during the time [he was] out on release.” J.A. 116. When asked if he thought he was “sexually dangerous,” he admitted: “If I don’t do treatment and I get off my medicine and really start doing drugs, I would probably be sexually dangerous.” J.A. 93-94.
As the district courts in North Carolina and New York have both recognized, the terms of supervised release existed to lessen the chance that this latter' scenario would unfold. The North Carolina district court specifically made reference to the importance of those conditions, see J.A. 466, and the New York district court found the conditions here sufficiently significant to impose a thirteen-month reincarceration for their violation, see J.A. 224-25. Surprisingly, and by contrast, the majority appears to downplay the importance of the supervised release infractions, arguing that the violations, “although troubling, do not cast any additional light on whether Springer currently suffers, or has ever suffered, from a qualifying mental illness.” Ante at 542.
I respectfully suggest, however, that those violations are highly pertinent to the central question before us, namely whether Springer will revert to his earlier pattern of child sexual abuse. The majority’s insistence that it affirms only a chunk of this case (that dealing with the serious mental illness prong) overlooks the fact that mental illness does not exist in a vacuum separate and apart from the question of volitional control. By Springer’s own admission, the combination of doing drugs and being off his medication would likely render him “sexually dangerous.” J.A. 93-94. Once again, the now-violated supervised release terms were meant both to head off that possibility and to assist Springer in the gradual restoration of his personal liberty.
Were I the trial judge in this case, I may well not have ruled as the district court did. However, putting the mootness issues aside, the standard of review and the superior vantage point of the district court require me to treat the decision below with real respect. Even so, I am not willing to take the additional step of affirming and giving preclusive effect to multiple findings made wholly without the benefit of the most recent evidence. Springer’s history of child sexual abuse is sufficiently troubling and this new evidence sufficiently relevant that — assuming the case were not moot — I would vacate the district court’s decision and remand with directions that the case be held in abeyance until a time that is close to Springer’s actual date of release. We *551 leave less to chance when we possess a fuller picture.
III.
A brief response to several of the majority’s points is in order. Contrary to the majority’s protestation, there is no due process violation. Before committing Springer, the government will bear the burden of proving in a hearing by clear and convincing evidence that he is “sexually dangerous.” 18 U.S.C. § 4248. The majority worries about forum shopping, but the only fora involved here have been the Eastern District of North Carolina, where Springer was previously confined for failure to comply with federal sex offender registration laws, and the Northern District of New York, where his supervised release violations as well as his underlying sexual abuse offenses took place. Further, contrary to the majority, this case would only be “capable of repetition” if Springer himself repeats his disregard of supervised release terms immediately upon release, and it will not “evade review” if Springer simply conforms to those terms.
Finally, this is not a case where the government is seeking a second bite at the apple. There has been no serial recertifi-cation process here, nor could there ever be absent significant new evidence of recent behavior that Springer was indeed sexually dangerous, as defined by the statute. The new evidence here all postdates the district court’s release order. It could not have been brought before that court in the earlier hearing. Given that circumstance, I am unable to discern any basis in law for not allowing a recertification hearing to proceed on a clean and non-preclu-sive slate.
There are surely instances where the state oversteps and where the legal system malfunctions. But this case is not one of those. Indeed this court unanimously denied the government’s motion to stay the district court’s order of release. United States v. Springer, No. 12-7687, Order of Oct. 5, 2012. The case was running Springer’s way. He had it within his power to regain the fullest measure of liberty, and it will not do for the majority to conjure up parades of nonexistent horri-bles or to lay the blame for the unfortunate situation here at someone else’s doorstep.
IV.
In the Adam Walsh Act, Congress sought both to prevent unjustified infringements of personal freedom and to protect children against sexual molestation and abuse. Children often lack defenses against sexual predation, especially if they are lonely or despondent, without adequate parental protection, or struggling simply to make a go of life. The Act requires us to predict Springer’s ability to refrain from sexually violent conduct and child molestation going forward. Given the sad and scarring consequences of a guess gone awry, I believe that any decision on the merits must be informed by consideration of the most recent and relevant evidence.
It hardly suffices to argue that the facts will all emerge in due course during the next commitment hearing. For if that is so, we should stand back now and let those facts develop free of the preclusive effect of a hasty merits ruling. The premature affirmance here puts an unwarranted thumb on the scale of any further consideration of this case and places this court’s imprimatur upon the decision to release. Why the rush? A bit of caution now may spare a child a painful future.

 Though the government’s recertification of Springer was one of the developments that led to the mooting of this case, vacatur is still justified because the government did not procure mootness through its own "unilateral action.” U.S. Bancorp Mtg. Co. v. Bonner Mall P’ship, 513 U.S. 18, 23, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Rather, mootness arose when, "by the vagaries of circumstance,” id. at 25, 115 S.Ct. 386, the government was moved to take action in response to Springer's violations.