In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3610

DANIEL MEDICI, DENNIS LEET, and JOHN KUKIELKA, on behalf
of themselves and all others similarly situated,

*Plaintiffs [Medici and Kukielka are also Appellants],*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 5891 — **Charles P. Kocoras**, *Judge.*

ARGUED APRIL 7, 2017 — DECIDED MAY 10, 2017

Before POSNER, RIPPLE, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* On July 2, 2015, the three plaintiffs filed this suit against the City of Chicago. Eventually they lost in the district court and two of them—Medici and Kukielka—have appealed.

The plaintiffs are military veterans currently employed as Chicago police officers. All three have tattoos relating to

their military service and to their religion. Medici's is a tattoo of a pair of wings with a halo, a symbol he displays to honor members of the U.S. military services killed in combat. Leet's and Kukielka's tattoos depict St. Michael, the archangel who is the patron saint of warriors, including (in modern times) police officers, paramedics, and firefighters.

The plaintiffs' suit had been precipitated by an order issued by the Chicago Police Department on June 8, 2015 (slightly more than a month before the suit was filed), with no prior notice to, or discussion with, the plaintiffs or other tattooed police officers. The order required all police officers on duty or otherwise "representing" the police department (it's not clear what is meant by "representing") to cover all their tattoos, either with clothing, or on parts of the body not covered by clothing with either a bandage or what is called "cover-up tape." The order was not limited to offensive tattoos, such as those conveying a racist or sexist message; *all* visible tattoos were outlawed. The announced reason for the order was to "promote uniformity and professionalism."

The plaintiffs complain that covering their tattoos with clothing causes overheating in warm weather and that cover-up tape irritates their skin. But these complaints are not the basis of the suit. Rather the basis is a claim that the police department's order violates the plaintiffs' right to free speech, which in the context of public employment means their right as citizens to communicate to the public their views on matters of public interest or concern, *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968), such as the heroism and suffering of members of the armed services. The complaint sought both a declaratory judgment that the order violates the plaintiffs' First

Amendment rights, and attorneys' fees and costs, plus "such other legal and/or equitable relief as [the court] may deem proper." The complaint also asked that the suit be converted to a class action on behalf of all Chicago police officers affected by and opposed to the department's order.

Without reaching the issue of class certification and before any discovery, the district court dismissed the suit on the merits, basically on two grounds: that the wearing of the tattoos was a "personal expression" rather than an effort at communicating with the public on matters of public concern, and hence was not protected by the First Amendment, and that the challenged order would promote uniformity and professionalism and thus was a good thing—so good as not to be outweighed by the plaintiffs' interest in communicating with the public by means of their tattoos.

Complicating the controversy—and in fact as we'll see rendering the lawsuit moot—the police union filed a grievance against the City claiming that the tattoo order violated the union's collective bargaining agreement with the City, which had issued the order without bargaining over the issue with the union as it should have done because the order affected the police officers' working conditions. The grievance was referred to arbitration and the arbitrator ruled that the tattoo order violated the collective bargaining agreement because of the absence of any bargaining over the order, and the City would therefore have to revoke the order and compensate the officers for any costs incurred by them in complying with it. The City folded—and having done so moved our court to dismiss the plaintiffs' appeal as moot on the ground that as a result of the arbitration the plaintiffs had obtained the relief they had sought.

Aside from seeking a declaratory judgment that would require the City to revoke its order, the plaintiffs' complaint had sought attorneys' fees, costs, and disbursements—but also "such other legal and/or equitable relief as [the court] may deem proper," an umbrella term that could include damages, although damages were not mentioned specifically. After the arbitration the City agreed to reimburse its police officers for money they had spent to comply with the now-invalidated policy, so any direct financial loss the plaintiffs suffered has presumably been remedied. And remember that they had never asked the district court to award damages, and as a result there's no mention of damages in that court's opinion. Although "Rule 54(c) of the civil rules entitles a prevailing plaintiff to the relief proper to his claim even if he did not request that relief, … there is … an exception … for cases in which a damages claim is added at the last minute in a desperate effort to stave off the dismissal of the case as moot." *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 948 (7th Cir. 2006); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997). That's this case.

So what should be done with the district judge's grant of judgment in favor of the City? The answer is "vacatur [that is, erasing a judgment so that its legal effect is as if it had never been written, *vacatur* being Latin for "it is made void"] is in order when mootness occurs through … the 'unilateral action of the party who prevailed in the lower court.'" *Arizonans for Official English v. Arizona, supra,* 520 U.S. at 71–72, citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 23 (1994). That's this case, the unilateral action of the City, which remember prevailed in the district court, having been its decision not to appeal the arbitration award obtained by the plaintiffs. Vacating a judgment when the

appeal from it is moot (moot here because the plaintiffs prevailed as a result of the arbitration) saves the losers below (the plaintiffs, on the First Amendment issue in their complaint) from having a binding judgment against them on an issue they can no longer appeal because of mootness. The City, which would prefer to retain its favorable ruling on the law books, protests that the mootness came about through the plaintiffs' act of filing the grievance, and was therefore not their own unilateral act, but it was the City that elected not to appeal the arbitration award.

The case is remanded to the district court with instructions to vacate its judgment as moot.