In re Jeffrey Alan ARNESON, Debtor.

Jeffrey Alan Arneson, Appellant,

v.

Farmers Insurance Exchange, Appellee.

BAP No. NV–01–1493–KRyB.

Bankruptcy No. 01–32588–GWZ.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 24, 2002.

Filed Aug. 30, 2002.

Lawrence L. Lozensky, Zephyr Cove, NV, for Appellant.

Jonathan King, Reno, NV, for Appellee.

Before KLEIN, RYAN, and BRANDT, Bankruptcy JJ.

## OPINION

KLEIN, Bankruptcy Judge.

The issue is whether a debtor can attack a judgment of nondischargeability rendered in a prior bankruptcy on a theory that the court of appeals erroneously failed to vacate the judgment when it dismissed the debtor's appeal after the underlying bankruptcy case was dismissed.

We conclude that it is up to the parties to request vacatur in the original appeal and that the judgment retains claim preclusion value unless and until actually vacated. Hence, we AFFIRM the order granting the judgment creditor relief from the automatic stay for judgment enforcement purposes.

## FACTS

The debtor/appellant Jeffrey Arneson injured someone while driving with a blood alcohol level of 0.16, pled guilty to felony DUI, and served fourteen months in prison.

Appellee Farmers Insurance Exchange ("Farmers") paid Arneson's victim under her uninsured motorist insurance coverage and acquired her causes of action through subrogation.

In 1996, Farmers obtained a $30,883.31 money judgment in a Nevada state court against Arneson on the subrogated personal injury claim. *Farmers Ins. Group v. Arneson*, No. CV96–07155 (2d Jud.Dist. Ct., Washoe County, Nevada).

In 1999, Arneson filed a chapter 13 bankruptcy case. *In re Arneson*, No. 99–30347 (Bankr.D.Nev. filed Feb. 10, 1999).

Farmers filed an adversary proceeding to have the debt determined nondischargeable as a drunk driving debt under 11 U.S.C. § 523(a)(9) and obtained a judgment that $25,000 of the judgment was such debt, which is excepted from discharge in chapters 7, 11, 12, and 13. *Farmers Ins. Exch. v. Arneson (In re Arneson)*, Adv. No. 99–3140 (Bankr. D.Nev.).

Arneson appealed the § 523(a)(9) judgment to the district court, which affirmed. No. CV–00–00246–HDM (D.Nev.).

Arneson then appealed to the Ninth Circuit. No. 00–17219 (9th Cir. filed Nov. 9, 2000).

On November 20, 2000, while appeal No. 00–17219 was pending in the Ninth Circuit, Arneson's chapter 13 case was dismissed because Arneson had stopped making plan payments.

Arneson did not notify the Ninth Circuit of the dismissal of the chapter 13 case, did not complete the record for the appeal, did not file an opening brief, did not respond to Ninth Circuit notices that the appeal was deficient and in danger of dismissal for lack of prosecution, did not suggest the appeal was moot, and did not make a motion to vacate the judgment.

The Ninth Circuit dismissed appeal No. 00–17219 "for failure to prosecute" on February 26, 2001.

In July 2001, Arneson filed the instant chapter 7 case. *In re Arneson*, No. 01–32588 (Bankr.D.Nev. filed July 26, 2001).

Farmers filed a motion for stay relief, seeking permission to enforce its nondischargeable money judgment by garnishing post-petition wages that are not property of the estate.

Arneson opposed stay relief, arguing that under *United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), it would offend due process to enforce the § 523(a)(9) judgment because his appeal "of right" was undecided when the chapter 13 case was dismissed.

The bankruptcy court, noting the appeal was dismissed for Arneson's failure to prosecute, applied principles of claim preclusion to reject his defense and granted relief from stay.

This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction via 11 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 11 U.S.C. § 158(a)(1).

## ISSUES

1. Whether claim preclusion is properly applied following dismissal of an appeal, without an order of vacatur, in circumstances in which the appeal was arguably moot.

2. Whether there was cause to grant relief from stay.

## STANDARD OF REVIEW

 The preclusive effect of a prior judgment is reviewed de novo as a mixed question of law and fact in which legal questions predominate. *Knupfer v. Wolfberg (In re Wolfberg)*, 255 B.R. 879, 881 (9th Cir. BAP 2000); *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 701 (9th Cir. BAP 1996); *accord, First Nat'l Bank v. Russell (In re Russell)*, 76 F.3d 242, 244 (9th Cir.1996). The decision to grant relief from stay is reviewed for abuse of discretion. *Bebensee–Wong v. Fed. Nat'l Mortgage Ass'n (In re Bebensee–Wong)*, 248 B.R. 820, 821 (9th Cir. BAP 2000).

## DISCUSSION

This case presents an example of the use of claim preclusion (res judicata) to prevent relitigation of a nondischargeability judgment that remains in effect.

The debtor's attempt to parry claim preclusion on a theory that his prior appeal of right was not completed is unavailing because he has not taken the steps necessary to persuade the Ninth Circuit to revise the terms of its dismissal of the appeal or to persuade the trial court to grant relief from its judgment under Federal Rule of Civil Procedure 60(b) ("Civil Rule"). Fed. R.Civ.P. 60(b), *incorporated by* Fed. R.Bankr.P. 9024.

## I

We begin by explaining why the basic requirements of claim preclusion are satisfied and then address why the debtor's theory is not adequate to defeat claim preclusion.

## A

 Claim preclusion requires: (1) parties either identical or in privity; (2) judgment rendered by court of competent jurisdiction; (3) prior action concluded to final judgment on merits; and (4) same claim or cause of action involved in both actions. *Rein v. Providian Fin. Corp.*, 252 F.3d 1095, 1098 (9th Cir.2001); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001).

There is no dispute about the first, second, and fourth elements. The parties are identical, the bankruptcy court is competent to hear a Bankruptcy Code action to except a debt from discharge, and the same § 523(a)(9) cause of action is involved.

The bankruptcy court rendered judgment declaring that $25,000 of the existing $30,883.31 money judgment against Arneson should be excepted from discharge under § 523(a)(9).[1]

The judgment rendered in the adversary proceeding, which was in the nature of a declaratory judgment that fixed the bankruptcy discharge status of the existing debt, was entered under Federal Rule of Civil Procedure 58 and awarded relief in the form of a declaration that $25,000 of the $30,883.31 money judgment satisfied the statutory requirement for exception to

---

1. That subsection excepts from discharge any debt:

(9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance;

11 U.S.C. § 523(a)(9).

discharge. Fed.R.Civ.P. 58, *incorporated by* Fed.R.Bankr.P. 9021.

Once the judgment declaring that $25,000 of Farmers' money judgment is nondischargeable under § 523(a)(9) was entered, it had the same status, and the same preclusive effect, as any other judgment rendered by a federal trial court under Rule 58.

### B

The basic rule in federal practice is that the act of taking an appeal is not effective to defeat claim or issue preclusion:

> The Supreme Court long ago seemed to establish the rule that a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the "appeal" actually involves a full trial de novo. The lower courts have taken the rule as settled ever since. 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4433, at 78–79 (2002) ("Wright & Miller"); *accord,* Restatement (Second) of Judgments § 13 cmt. f ("Requirement of Finality").

■ Thus, the fact that Arneson appealed did not, of itself, affect the preclusive force of the bankruptcy court's judgment. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir.1988). In the absence of some other factor, the original § 523(a)(9) judgment is binding in Arneson's second bankruptcy case.

### C

Arneson contends that the vacatur doctrine of *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (*"Munsingwear"*), precludes preclusion in this case. We disagree. First, we summarize the doctrine. Then we explain how it relates to this appeal.

### 1

■ *Munsingwear* stands for the proposition that where an appeal becomes moot by "happenstance," the appeal should be dismissed and the trial court decision vacated. *Id.* at 39–40, 71 S.Ct. 104.

■ The corollary is there should be no vacatur if mootness is not by happenstance. *Dilley v. Gunn,* 64 F.3d 1365, 1370 (9th Cir.1995); *Nat'l Union Fire Ins. Co. v. Seafirst Corp.,* 891 F.2d 762, 765–69 (9th Cir.1989); *Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters,* 686 F.2d 720, 722 (9th Cir.1982) (*"Ringsby"*).

### 2

■ The Supreme Court clarified the *Munsingwear* analysis in 1994 when ruling that appeals that are mooted by settlement do not require vacatur. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (*"U.S. Bancorp"*). In doing so, it renounced dictum in *Munsingwear* referring to vacatur as automatic and mandatory and, instead, held that vacatur is equitable in nature and that equitable analysis provides the appropriate framework for analysis. *Id.* at 23–25, 115 S.Ct. 386.

■ Such equitable analysis is particularly important where the appellant has a hand in the events that lead to mootness. In such circumstances, the "losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.* at 25, 115 S.Ct. 386. The Supreme Court explained that the important point in this reasoning is not that the judgment has become unreviewable, but rather that it is unreviewed by choice of the appellant. Thus, the appellate court is left with the

same lack of jurisdiction that would prevail if the losing party had not appealed in the first place. *Id.*

■ Conversely, where the party that prevailed at trial is the perpetrator of the events that lead to mootness, the equities tend to run in favor of vacating the judgment.

■ The burden is on the party that seeks relief from the status quo of the judgment to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26, 115 S.Ct. 386.

Since the trial court often has a better appreciation of the landscape, the Supreme Court noted that "a court of appeals presented with a request for vacatur of a [trial]-court judgment may remand the case with instructions that the [trial] court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)." *Id.* at 29, 115 S.Ct. 386.

### 3

The Supreme Court's clarification in *U.S. Bancorp* that automatic vacatur under *Munsingwear* should not be viewed as "established practice" necessitated what the Ninth Circuit described as "some adjustment to the analytical framework which governs our decision whether or not to vacate a district court judgment when mootness prevents appellate review." *Dilley v. Gunn,* 64 F.3d at 1370.

Likewise, we must make the same adjustments. Our decision in *United States v. Moseley (In re Moseley),* 101 B.R. 608 (9th Cir. BAP 1989), in which we imposed automatic vacatur under *Munsingwear,* should now be construed in light of *U.S. Bancorp.*

■ The Ninth Circuit, in close cases, has taken advantage of the Supreme Court's suggestion of remand. The prac-

tice when mootness results from acts of the appellant "is not to vacate the [trial] court's decision automatically, but to remand so the [trial] court can decide whether to vacate its judgment in light of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" *Dilley v. Gunn,* 64 F.3d at 1370–71, *quoting Ringsby,* 686 F.2d at 722.

### 4

■ There is also a procedural aspect to *Munsingwear* that is more important after *U.S. Bancorp.* If the appellate court does not order vacatur on its own, then it is up to the parties to make an appropriate motion. In *Munsingwear,* since the appellant had not made a motion to vacate, the trial court decision was permitted to stand because the appellant, "having slept on its rights," should not expect the Supreme Court to do "what by orderly procedure it could have done for itself." *Id.* at 41, 71 S.Ct. 104.

■ Thus, under the procedural aspect of the *Munsingwear* rule, the consequence of not making a motion to vacate where the appellate court merely dismisses the appeal as moot is that "the judgment of the district court remains and can command the same preclusion consequences as if no appeal had been attempted." 13A WRIGHT, MILLER & COOPER: JURISDICTION 2d § 3533.10, at 426 (1984).

### D

■ Having summarized the *Munsingwear–U.S. Bancorp* vacatur doctrine, we turn to Arneson's theory, concluding that we lack the authority to require a vacatur in the previous action and that he would have a difficult task establishing equitable entitlement to the extraordinary remedy of vacatur.

**1**

We think that orderly procedure requires that the question of vacatur must be raised in the original appeal or directly with the original trial court by way of Civil Rule 60(b) and not indirectly as a defense in a judgment enforcement proceeding. Fed.R.Civ.P. 60(b), *incorporated by* Fed. R.Bankr.P. 9024.

Nothing in *Munsingwear* or *U.S. Bancorp* suggests that an attack in another proceeding would be appropriate. Thus, we are persuaded that it is not permissible to raise for the first time in a trial court by way of defensive attack the question of whether the court of appeals should have ordered vacatur.

This conclusion that vacatur must be raised directly in the initial action or appeal is a corollary to the procedural aspect of *Munsingwear* that the party who wants vacatur should ask the court for it and that failure to make an appropriate motion will, as in the *Munsingwear* case itself, leave the trial court decision in force with claim preclusion value.

This conclusion is reinforced by the interpretive shift in *U.S. Bancorp* that emphasizes the equitable nature of vacatur. Formerly, when vacatur was thought to be mandatory and automatic, one could argue that dismissal of a mooted appeal without vacatur was a mere absent-minded omission and that refusing to afford preclusive effect to the judgment would be giving effect to the unstated intention of the appellate court. Now that the focus is on equities, the result of the vacatur analysis has become too difficult for some other court to predict.

Requiring that the matter be raised directly with the courts responsible for issuing and reviewing the initial decision will yield more informed equitable determinations. This comports with the modern view of relief from judgments that a key aspect of the choice about whether to entertain relief from a judgment is "one of proper forum in light of the ground upon which relief is sought." RESTATEMENT (SECOND) OF JUDGMENTS § 80 rptr.'s note, cmt. a ("Relief in the Course of a Subsequent Action").

In light of the fact that the vacatur (non-)decision from which relief is being sought belongs primarily to the court of appeals, the bankruptcy court is a singularly inappropriate forum for the simple reason that a federal trial court cannot reasonably be expected to substitute its judgment for that of a federal appellate court.

In short, requiring a motion to vacate be made by the party who wishes to have the trial court's judgment vacated in connection with dismissal of an appeal for mootness is merely another way of saying that what used to be called collateral attack cannot be used to accomplish vacatur. Hence, Arneson's reliance on the *Munsingwear–U.S. Bancorp* vacatur analysis is not adequate to defeat claim preclusion.[2]

**2**

If Arneson wants a decision on his theory that the omission of a vacatur deprived him of due process, he will have to revisit the original adversary proceeding.

He could ask the court of appeals to adjust the terms of its dismissal. If so, he would have to carry his burden to show "equitable entitlement to the extraordinary remedy of vacatur." *U.S. Bancorp*, 513 U.S. at 26, 115 S.Ct. 386. He would be required to show that the appeal was

---

**2.** We note that Arneson is in the same position as the appellant was in *Munsingwear.* He could have made a motion for vacatur and did not avail himself of the opportunity. Another court will not extricate him. *Munsingwear,* 340 U.S. at 41, 71 S.Ct. 104.

moot[3] and that he was not responsible for the mootness.[4] Moreover, he would have to persuade the court to afford him relief even though he did not earlier share his mootness theory with the court of appeals.

Since the court of appeals relinquished jurisdiction over the appeal when it dismissed it for lack of prosecution, another method would be to make a motion for relief from judgment in the trial court under Federal Rule of Civil Procedure 60(b)(5). Fed.R.Civ.P. 60(b)(5), *incorporated by* Fed.R.Bankr.P. 9024.

If he goes to the trial court under Rule 60(b)(5), the analysis would be different. The trial court is entitled to choose between the *U.S. Bancorp* "extraordinary remedy" standard or a more generous equitable balancing inquiry into the competing values of finality, of relitigation of unreviewed disputes, and of hardship. In doing so, the trial court is making a decision independent of the court of appeals through application of different considerations because a trial court enjoys "greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance." *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1170 (9th Cir.1998).

3

Since Arneson's indirect attack was presented to the same bankruptcy judge who rendered the original judgment, the judge

---

**3.** Arneson's assumption that dismissing the chapter 13 case mooted his appeal was more heroic than rational. Whether a matter is mooted by dismissal of an underlying bankruptcy depends on how closely the dispute is connected with the bankruptcy case. *United States v. Pattullo (In re Pattullo)*, 271 F.3d 898, 901 (9th Cir.2001). The Bankruptcy Code prescribes automatic vacation of specified judgments upon dismissal of a case; § 523 discharge exception judgments are not on the list of automatically vacated judgments. 11 U.S.C. § 349(b)(2). *Rodriguez v. Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270–71 (Bankr.N.D.Ill.1995) (not moot). As recognized in § 523(b), a § 523 judgment (other than a judgment under § 523(a)(1), (a)(3), or (a)(8)) has claim preclusive value in subsequent bankruptcy cases. Moreover, the dismissal of a bankruptcy is ordinarily without prejudice to filing another case. 11 U.S.C. § 349(a).

Most § 523 theories, including § 523(a)(9), are subject to concurrent jurisdiction under 28 U.S.C. § 1334(b). *Rein*, 252 F.3d at 1101 n. 7; *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 904–06 (9th Cir. BAP 1999); *Fid. Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 919–23 (Bankr.E.D.Cal.1995). The reason a concurrent-jurisdiction § 523(a)(9) action is not prosecuted in a nonbankruptcy court before bankruptcy is that it is not ripe, hence not justiciable, until a bankruptcy is filed, *Brown v. Felsen*, 442 U.S. 127, 138–39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); during

bankruptcy, the automatic stay bars the action; after bankruptcy, it could be prosecuted in nonbankruptcy court.

Here, enough of a dispute remained between the parties that a useful purpose might have been served by deciding the appeal. Since § 523(a)(9) drunk driving debts cannot be discharged under any Bankruptcy Code chapter, a final determination fixing the debt's § 523(a)(9) status would control the debtor's choice of chapter in another bankruptcy. In other words, any appellate mootness would have been no more than a prudential version of the doctrine, the application of which is discretionary.

**4.** It could be difficult for Arneson to show that he is not responsible for any mootness because responsibility for what he describes as an "involuntary" dismissal can be laid at his feet. While the appeal was pending in the district court, Arneson stopped making payments on his chapter 13 plan, which, as a practical matter, makes dismissal inevitable where there is no effort to rectify the default. When the district court rendered its decision, he filed a notice of appeal to the Ninth Circuit even though dismissal was already in view and, eleven days after the notice of appeal was filed, permitted the chapter 13 to be "involuntarily" dismissed, then let the appeal die for want of prosecution on the assumption that the judgment would be automatically vacated as moot. This appears to be premeditated.

had discretion to deviate from the requirement of seeking relief from his prior judgment pursuant to Civil Rule 60(b), if he was persuaded that the "convenient administration of justice would be served by determining the question of relief in the course of the subsequent action." RESTATEMENT (SECOND) OF JUDGMENTS § 80 ("Relief in the Course of a Subsequent Action").

The court, noting that the Ninth Circuit dismissed the appeal for lack of prosecution and not for mootness, was not persuaded it should take the exceptional step of short-circuiting well-established procedure. We see no abuse of discretion.

## II

The next question is whether the bankruptcy court abused its discretion in granting Farmers' motion for relief from the automatic stay. We start with the applicability of the stay.

## A

In addition to protecting "property of the estate," the filing of a bankruptcy case operates as an automatic stay of all acts to collect pre-bankruptcy debts against the debtor or property of the debtor. 11 U.S.C. § 362(a)(5)–(6); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162, 1166 (9th Cir. 1990).

Specifically, § 362(a)(5) automatically stays "any act" to "enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before" bankruptcy. 11 U.S.C. § 362(a)(5) (emphasis supplied).

Likewise, § 362(a)(6) automatically stays "any act to collect, assess, or recover a claim against the debtor" that arose before bankruptcy. 11 U.S.C. § 362(a)(6).

Although Farmers requested relief from the automatic stay for "cause" under § 362(d)(1), it said it was doing so "as a cautionary matter" because it contended that the automatic stay does not prevent the collection against non-estate property of a debt that has been determined to be nondischargeable.

For the proposition that the automatic stay does not block collection of prior § 523 judgments, Farmers relied on *Boatmen's Bank v. Embry (In re Embry),* 10 F.3d 401, 403–04 (6th Cir.1993), which adopted our analysis in *Watson v. City Nat'l Bank (In re Watson),* 78 B.R. 232, 234–35 (9th Cir. BAP 1987) ("*Watson*"), which we recently reiterated. *Palm v. Klapperman (In re Cady),* 266 B.R. 172, 180–83 (9th Cir. BAP 2001) ("*Cady*").

> Our holding in *Watson* was:
>
> the automatic stay provisions of [§ ] 362 do not preclude the execution of a judgment, which has been held by the bankruptcy court to be non-dischargeable, upon property of the debtor which is not property of the estate.

*Watson,* 78 B.R. at 235.

This appeal, however, requires us to clarify and refine *Watson* and *Cady.*

In clarifying what our judgment enforcement cases mean, we start from the premise that we were not contradicting the terms of §§ 362(a)(5) and (6). Rather, we were construing those sections in light of the particular factual situations presented.

The procedural fact that is common to *Watson* and *Cady,* as well as the Sixth Circuit's *Embry* decision, is that the judgment enforcement activity that was permissible in the face of the automatic stay was enforcement of a § 523 judgment rendered by the bankruptcy court in the *same* bankruptcy case. In each instance, it was held that it was not necessary for the judgment creditor to take the separate

step of obtaining relief from the automatic stay following entry of a § 523 judgment.

The specific judgment enforcement activity, including such matters as recording abstracts and garnishing wages that are not property of the estate, is governed by Federal Rules of Civil Procedure 62, 64, and 69, which apply to bankruptcy adversary proceedings. Fed.R.Civ.P. 62, 64 & 69, *incorporated by* Fed.R.Bankr.P. 7062, 7064 & 7069. Thus, all judgment enforcement activity during the life of the bankruptcy case remains under the supervision and control of the bankruptcy court.

■ It is settled that the automatic stay is not offended by the filing of an adversary proceeding, including a § 523 action, against the debtor in the same bankruptcy case that gave rise to the automatic stay. *Rein,* 252 F.3d at 1101–02; *Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods, Inc.),* 12 F.3d 875, 878 (9th Cir.1993); *Teerlink v. Lambert (In re Teerlink Ranch Ltd.),* 886 F.2d 1233, 1237 (9th Cir.1989). In contrast, these decisions do not suggest that the automatic stay does not apply to an adversary proceeding in a different bankruptcy case.

■ The question then becomes whether there is any reason to require specific relief from stay in order to enforce a judgment against the debtor in an adversary proceeding in the same case that gave rise to the automatic stay. Our answer in *Watson* and *Cady* was that enforcement of an adversary proceeding judgment did not require relief from the automatic stay in the same bankruptcy case in which the adversary proceeding judgment was rendered. That was the narrow holding on that point in both instances.

Two different rationales support those decisions. First, as articulated in *Watson,* the automatic stay does not apply to enforcement of judgments rendered within the same bankruptcy case for the same reason that the automatic stay does not bar the filing of the adversary proceeding in which the judgment was rendered. *Watson,* 78 B.R. at 233–35. This is consistent with the proposition that the bankruptcy court's authority to supervise and control the judgment enforcement process under Federal Rules of Civil Procedure 62, 64, and 69 is part and parcel of the adversary proceeding that is not stayed.[5]

In the alternative, one could say that the adversary proceeding judgment functions as a de facto grant of stay relief for judgment enforcement purposes. We note that the 10–day automatic stay of judgment enforcement provided by Federal Rule of Civil Procedure 62(a) coincides with the 10–day bankruptcy appeal period prescribed by Federal Rule of Bankruptcy Procedure 8002(a). *Compare* Fed.R.Civ.P. 62(a), *incorporated by* Fed.R.Bankr.P. 7062, *with* Fed.R.Bankr.P. 8002(a).

While we relied on the first rationale in *Watson,* either rationale supports its narrow holding. We were not then, and are not now, compelled to choose between them. Under either rationale, the automatic stay does not preclude enforcement of an adversary proceeding judgment against the debtor that is not directed against property of the estate in the *same* case.

■ None of these decisions suggest that the automatic stay arising by virtue of the filing of a different bankruptcy case would not apply to the enforcement of an adversary proceeding judgment rendered in a previous bankruptcy case.

Although we ruled above that a § 523 judgment rendered in a prior bankruptcy

---

**5.** The dictum in *Watson's* footnote 3 should be read against the backdrop of the protections provided by the court's authority over judg-ment enforcement matters. *Watson,* 78 B.R. at 235 n. 3.

case has claim preclusion effect unless and until vacated and that there can be no collateral attack on a *Munsingwear–U.S. Bancorp* theory in a new bankruptcy, we also hold that the filing of the second bankruptcy petition under 11 U.S.C. § 301 operated to impose a new automatic stay under § 362.[6]

Thus, §§ 362(a)(5) and (6) applied to stay Farmers from garnishing Arneson's wages, which are not property of the estate, and Farmers' motion for relief from stay was necessary.

### B

The bankruptcy court concluded that there was "cause" to grant relief from stay. 11 U.S.C. § 362(d)(1).

Arneson's sole challenge to the finding of "cause" was his theory, which we have rejected as a matter of law, that he was entitled to an automatic vacatur by way of attack on the previous adversary proceeding judgment in a subsequent proceeding.

No other basis for finding an abuse of discretion has been asserted, and we perceive none. Accordingly, we must affirm.

### CONCLUSION

As it was not appropriate to use a *Munsingwear–U.S. Bancorp* vacatur theory as a basis for indirect attack on the preclusive effect of an adversary proceeding judgment rendered in a prior bankruptcy case, the bankruptcy court did not abuse its discretion in granting Farmers' motion for relief from the automatic stay. AFFIRMED.

---

**6.** The pertinent operative statutory language is:

[A] petition filed under section 301 … of this title, …, operates as a stay applicable to all entities, …

11 U.S.C. § 362(a).