The **FUND FOR ANIMALS**, et al., Plaintiffs,

v.

Fran **MAINELLA**, et al., Defendants.

No. CIV.A.03–2475(RBW).

United States District Court, District of Columbia.

Sept. 1, 2004.

Jonathan Russell Lovvorn, Meyer & Glitzenstein, Washington, DC, for Plaintiffs.

Lauren Beth Fischer, U.S. Department of Justice, Barbara A. Miller, Birch, Horton, Bittner & Cherot, Washington, DC, Anna Margo Seidman, Vienna, VA, for Defendants.

Ellen Barney Balint, Trenton, NJ, for Movant.

## MEMORANDUM OPINION

WALTON, District Judge.

On December 8, 2003, this Court issued a Memorandum Opinion denying the plaintiffs' request for a temporary restraining order to prevent a black bear hunt in a portion of the Delaware Water Gap National Recreation Area located in the State of New Jersey. *Fund for Animals v. Mainella*, 294 F.Supp.2d 46, 59 (D.D.C. 2003). The merits of the case are still pending before this Court, however, the defendants have now filed a motion to dismiss this case contending that it has become moot. Currently before the Court are (1) the Defendants' Motion to Dismiss ("Defs.' Mot.") and (2) the Plaintiffs' Opposition to Defendants' Motion to Dismiss, Alternative Motion to Vacate, and Memorandum in Support Thereof ("Pls.' Opp.'n").[1] For the following reasons, this Court grants the defendants' motion to dismiss and denies the plaintiffs' motion for vacatur.

### I. *Factual Background*

The facts of this case can be found in this Court's December 8, 2003 opinion and will only be briefly restated here. *Mainella*, 294 F.Supp.2d at 48–50. On May 5, 2003, the State of New Jersey proposed a regulation, 35 N.J. Reg. 4053(a) (Sept. 2, 2003), to authorize a limited black bear hunt in the state from December 8, 2003 until December 13, 2003. Memorandum In Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 3. The goal of the hunt was to help maintain a healthy, stable black bear population. *Id.* On December 1, 2003, the plaintiffs filed a complaint and a motion in this Court for a temporary restraining order to prevent the hunt from proceeding. *Mainella*, 294 F.Supp.2d at 48. The plaintiffs' central argument was that because part of the land on which the hunt was to be conducted was federal land, the defendants—Fran Mainella, Director of the National Park Service and Gale Norton, Secretary of the U.S. Department of Interior ("federal defendants")—had violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, by acting in a manner that was arbitrary, capricious and not in accordance with the law. *Id.* Specifically, the plaintiffs alleged that the federal defendants had an obligation to: (1) promulgate hunting regulations pursuant to

---

1. Also before this Court are the Defendant Intervenors', Safari Club International and U.S. Sportsmen's Alliance Foundation, Response in Support of Motion to Dismiss and Opposition to Plaintiffs' Cross–Motion to Vacate ("Ints.' Mot.") and Defendant Intervenors' Opposition to Plaintiffs' Cross–Motion to Vacate ("Ints.' Opp.'n").

the Delaware Gap Enabling Act, 16 U.S.C. § 460; (2) ensure that the hunting would not impair park resources or result in "wanton destruction" of park wildlife under the National Park Service Organic Act, 16 U.S.C. § 1 *et seq.;* and (3) prepare documents addressing, *inter alia,* the indirect environmental impact on National Park resouces as required under the National Environmental Policy Act, 42 U.S.C. § 4331. *Id.;* Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ 93, 96, 100.

On December 5, 2003, "due to the limited amount of time the Court had to consider the issues raised by the parties," this Court issued a temporary restraining order. *Mainella,* 294 F.Supp.2d at 48. However, on December 8, 2003, after a more thorough review of the case, this Court concluded that the plaintiffs were not entitled to injunctive relief. *Id.* The defendants now move to dismiss the case as moot since the challenged black bear hunt has ended. Defs.' Mem. at 4. The plaintiffs oppose the request for dismissal and have filed a cross-motion seeking vacatur of the Court's December 8, 2003 opinion if this Court should determine the case is now moot.

## II. *Standard of Review*

Under Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 18 (D.D.C.1998). In reviewing the motion, this Court must accept as true all the factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Additionally, in deciding a Rule 12(b)(1) motion, it is well established in this Circuit

that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Academy of Sciences.,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Grand Lodge of Fraternal Order of Police,* 185 F.Supp.2d at 14. A motion to dismiss on the grounds of mootness is properly brought under Rule 12(b)(1). *See, e.g., Bracco Diagnostics, Inc. v. Shalala,* 1997 WL 614485, at *1 (D.D.C.1997).

## III. *Legal Analysis*

### (A) Is this Case Moot?

The defendants contend that when the black bear hunt ended on December 13, 2003, the plaintiffs were unable to receive any relief from this Court. Therefore, the defendants argue that the Court should dismiss this case as moot pursuant to Rule 12(b)(1). Defs.' Mem. at 4. The plaintiffs explain, however, and opine that the case is not moot because the defendants have not shown that the black bear hunt will not occur again in the future. Pls.' Opp.'n at 9.

> The mootness doctrine limits federal courts to deciding "actual, ongoing controversies." "Even where the litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"

*Lepelletier v. FDIC,* 2001 WL 1491398 (D.C.Cir.2001) (internal citations omitted) (quoting *Honig v. Doe,* 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Clarke v. United States,* 915 F.2d 699, 701 (D.C.Cir.1990)). However, a court will not

apply the mootness doctrine and dismiss a case if the challenged action is capable of repetition but evading review. This disqualifier of the mootness doctrine is "limited to situations where two elements [are] combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Furthermore, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env. Services,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)). However, " '[a] case might become moot if [a defendant's] subsequent [voluntary] events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* at 189, 120 S.Ct. 693 (internal citation omitted).

■ In this case, the defendants assert that on December 13, 2003, when the hunt ended as provided for in the New Jersey regulation, this Court was unable to grant the plaintiffs any relief they sought and thus this case became moot. Defs.' Mem. at 4. Furthermore, the defendants contend that the "capable of repetition, yet evading review" doctrine does not apply because if black bear hunting is permitted in the future, the State of New Jersey will be required to promulgate a new regulation in accordance with the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B–1 to –15. *Id.* Thus, the defendants conclude that any new rulemaking would likely be based upon new and different facts and "provide [the] plaintiffs with ample opportunity to bring a challenge . . . ." Defs.' Mem. at 4–5. Furthermore, the defendants posit that this case does not fall under the *Laidlaw* exception to the mootness doctrine because it was the New Jersey state regulation, promulgated under the New Jersey Administrative Procedure Act, that ended the hunt and not any action by the federal defendants. Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply") at 2. Thus, while the federal defendants concede that the bear hunt could occur again in the future, they argue it would not be based upon their conduct, but rather, based on the actions of the State of New Jersey. *Id.* at 3.

The plaintiffs contend that this case is not moot. Pls.' Opp.'n at 9. Relying on *Laidlaw,* the plaintiffs argue that the defendants have not demonstrated that "it is 'absolutely clear' that these actions cannot 'reasonably be expected to recur.'" *Id.* The plaintiffs argue that although this Court cannot grant the plaintiffs relief regarding the 2003 hunting season, this Court can grant relief regarding future hunting seasons. Therefore, they argue that this case should not be dismissed as moot. *Id.* at 9–10.[2]

This Court agrees with both parties that it cannot grant the plaintiffs relief with respect to the 2003 hunting season, as it has already expired. Pls.' Opp.'n at 9–10.

---

2. As an initial matter, the plaintiffs allege that the defendants in this case include not only the federal defendants, but also the State of New Jersey and various hunting groups who have intervened. *Id.* at 9. Although the State of New Jersey and the various hunting groups have been granted leave to intervene in this case, their actions are not at issue in this case because the plaintiffs' complaint only challenges the actions of the federal defendants. *See, e.g.,* Compl. ¶¶ 43, 44.

See American Fed'n of Gov't Employees, AFL–CIO v. United States, 330 F.3d 513, 518 (D.C.Cir.2003) (declaring moot a claim for relief, which sought an injunction against the enforcement of a provision of the FY 2000 Defense Appropriate Act since the fiscal year has "long since passed."). In this case, the end of the black bear hunt was mandated by the New Jersey Regulation. See N.J.A.C. 7:25–5.6 (stating that the black bear hunting season would run from December 8, 2003 until December 12, 2003). This regulation was promulgated by the State of New Jersey, and was not based on any actions on the part of the federal defendants. Thus, the end of the black bear hunting season, as mandated by the regulation promulgated by the State of New Jersey, mooted this case. It is clear that since the federal defendants in the present action did not voluntary act to make the case moot, the Supreme Court's decision in Laidlaw does not apply. See Laidlaw, 528 U.S. at 189, 120 S.Ct. 693 (providing an exception to the mootness doctrine based on the defendants voluntary action).

Furthermore, any relief that the plaintiff is seeking for future bear hunting seasons, should the State authorize one, would not escape review. If New Jersey were to authorize another hunt, it would be required to promulgate a new regulation through a notice and comment process under the New Jersey Administrative Procedure Act. See N.J.S.A. 52:14B–1 to –15. Through this process, the facts and circumstances underlying the plaintiffs'

claims could be substantially different than the facts and circumstances of the case currently before this Court. For example, a subsequent regulatory authorization might not include federal land in the approved hunting area, which would make this case solely one of state law and this Court would not have jurisdiction. Nevertheless, if any subsequent regulation is promulgated, the plaintiffs would have notice of the rule making, would be able to participate in it, and would have sufficient time to challenge any federal agency action (or actionable inaction) in this or another court of competent jurisdiction.[3] This is simply not the type of case that is capable of repetition, yet evading review. Compare Southern Co. Services, Inc. v. F.E.R.C., 2003 WL 22669559, at *1 (D.C.Cir.2003) (noting that a challenge to the application of an agency policy to a contract became moot when the contract expired even though the allegedly illegal application of that policy was capable of repetition because the policy would not evade review in a subsequent case where the contract had not expired) with Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d 365, 369–70 (D.C.Cir.1992) (concluding that application of a policy regarding protests could escape review since protest permits only had to be secured fifteen days prior to the protest, but judicial review could take up to a year). For the foregoing reasons, this Court concludes that this case is now moot and must be dismissed pursuant to Rule 12(b)(1).

3. When seeking the temporary restraining order, the plaintiffs stated the late filing of this case was based upon the plaintiffs not discovering until November 14, 2003, that the black bear hunt would not be limited to state land, but would also include federal land. Based upon representations made during the hearing seeking a temporary restraining order, this Court found "troubling" the late filing of this complaint because plaintiffs did not, and could not, contend that the regulations, issued in July 2003, which delineated the boundaries of the hunt and included federal land, were not available to them. Mainella, 294 F.Supp.2d at 49 n. 6. So long as any future regulations included the boundaries of the hunt, the plaintiffs would not likely be able to contend that they were unaware that the hunt included federal land and would be able to bring a more timely action.

**(B) Should this Court Vacate its December 8, 2003 Memorandum Opinion and Order?**

The plaintiffs argue that if this Court finds that the case is now moot, it should vacate its December 8, 2003 decision. Pls.' Opp.'n at 10–16. The purpose of vacatur is to "prevent [an unreviewable opinion] from having a preclusive effect." *In re Smith*, 964 F.2d 636, 638 (7th Cir. 1992). The Court does not, however, "vacate opinions, to prevent them from having a precedential effect." *Id.* The Supreme Court last addressed the issue of vacatur in *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Justice Scalia, writing for a unanimous Court, concluded that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstances, ought not in fairness be forced to acquiesce in the judgment." *Id.* at 25, 115 S.Ct. 386. "Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. This judgement is not unreviewable, but simply unreviewed by his own choice." *Id.* Thus, "vacatur must be decreed for those judgments whose review ... become[s] moot due to circumstances unattributable to any of the parties." *Id.* at 23, 115 S.Ct. 386 (citing *Karcher v. May*, 484 U.S. 72, 82–83, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40, 71 S.Ct. 104, 95 L.Ed. 36 (1950)). "It is the [plaintiffs'] burden, as the party seeking relief from the status quo of the ... judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur." *Id.* at 26, 115 S.Ct. 386.

A court granting vacatur "must also take account of the public interest." "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur." *Bancorp*, 513 U.S. at 27, 115 S.Ct. 386. "[P]ublic interest is best served by granting relief when the demands of 'orderly procedure,' cannot be honored; we think conversely that the public interest requires those demands to be honored when they can." *Id.* (internal citation omitted). In determining whether to grant a motion for vacatur, this Court must balance these competing equitable interests in determining whether the motion should be granted. *See National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 354 (D.C.Cir.1997).

It is the established practice of courts of appeal, when presented with a case that has become moot either while it is pending appeal or pending a decision of the appellate court on the merits, "to reverse or vacate the judgment below and remand with a direction to dismiss." *Bancorp*, 513 U.S. at 22–23, 115 S.Ct. 386 (citing *Munsingwear*, 340 U.S. at 39, 71 S.Ct. 104). This "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Id.; see, e.g., Born Free USA v. Norton*, 2004 WL 180263 (D.C.Cir.2004) (vacating district court order when the issues became moot on appeal); *Pharmachemie B.V. v. Barr Lab., Inc.*, 276 F.3d 627 (D.C.Cir.2002) (same); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 352–54 (D.C.Cir.1997) (same). Vacatur is not simply a tool used by appellate courts, as district courts have used the doctrine to vacate their own opinions. *See*

*Davies v. Paul Revere Life Ins. Co.,* 236 F.Supp.2d 445, 445 (M.D.Pa.2002); *Nilssen v. Motorola Inc.,* 2002 WL 31369410 at *2–3 (N.D.Ill.2002); *Keeler v. Cumberland,* 951 F.Supp. 83, 84–85 (D.Md.1997).

■ The plaintiffs raise two primary arguments in support of their contention that this Court's December 8, 2003 opinion should be vacated. First, they posit that because this case is now moot, the plaintiffs' claims are unreviewable in the Court of Appeals. Pls.' Opp.'n at 12. Furthermore, the plaintiffs opine that the case has not been fully reviewed by this Court because the Court did not have the opportunity to review the administrative record before issuing its opinion. *Id.* at 12. Second, the plaintiffs contend that they would be prejudiced without vacatur of the opinion because the opinion sets precedent on the legal questions in dispute. *Id.* at 13.

As indicated, the plaintiffs first contend they were denied full review by this Court because the Court did not have before it the administrative record. *Id.* at 13. Under the APA, this Court can give meaningful review to the merits of a case only after the administrate record is produced. 5 U.S.C. § 706 ("[T]he court shall review the whole [administrative] record or those parts of it cited by a party ...."); *cf. American Bioscience v. Thompson,* 243 F.3d 579, 582–83 (D.C.Cir.2001) (concluding that when a district court reviews an informal agency action on the merits, it should require the agency to file the administrative record); *Collagenex Pharm., Inc. v. Thompson,* 2003 WL 21697344 at *1 (D.D.C.2003) ("The D.C. Circuit has clearly held that courts should not issue preliminary injunctions without a review of the entire administrative record to determine a plaintiff's likelihood of success on the merits."). The plaintiffs argue that many of the factual assertions made by the defendants have not been tested against the administrative record, thus full-meaningful

review has not yet been given to this case. Pls.' Reply at 16. The defendants contend, however, that this is not a typical administrative records case since there is no federal action for which an administrative record could be prepared. Defs.' Reply at 7.

This Court agrees with the defendants' assertion that despite the APA claims in the present lawsuit, the case before the Court was one of statutory interpretation, not agency action. This Court was asked to determine if the statutes mandated action by the federal defendants, not whether the actions of the federal defendants were contrary to the statutes. *See* Compl. ¶¶ 93, 96, 100. It is difficult to imagine that there would be any record of agency "inaction" with which to produce an administrative record. *See, e.g., Northcoast Env. Ctr. v. Glickman,* 136 F.3d 660, 665 (9th Cir.1998) ("where the issue is alleged agency inaction, ...the scope of review in cases ... is broader ... because there will generally *be little, if any, record to review.*") (emphasis added).

The plaintiffs' contention that an administrative record exists is merely speculative. Additionally, the plaintiffs have not demonstrated that if they had the administrative record the facts established by that record would be any different from the facts before the Court when it was considering whether to issue a temporary restraining order. Admittedly, the government has not produced the administrative record, however, if one exists, it appears that the plaintiffs have made no effort to acquire it. Thus, despite the plaintiffs' strenuous argument that the case cannot receive a full and fair review without access to the administrative record, the plaintiffs have not alleged that the defendants have refused to provide them with one and have not filed a motion in this Court to compel the production of the record by the defendants either before or

after this Court's December 8, 2003 opinion. It is an old axiom, which still holds true, that in order to obtain equity, one must do equity. *See, e.g., Smith v. World Ins. Co.*, 38 F.3d 1456, 1462–63 (8th Cir. 1994) ("Before we can apply an equitable doctrine, we must determine 'whether he who seeks equity has done equity.'"). The plaintiffs' argument rests largely upon their position that this Court did not review the administrative record, yet they have made no attempt to establish that one exists or to procure it. The plaintiffs have voluntarily sat on their rights to obtain the record, if it exists, and they cannot now claim that its absence is the basis for receiving the extraordinary equitable remedy of vacatur. Thus, the plaintiffs' argument for vacatur must fail.

This Court also finds no merit to plaintiffs' assertion that they would be prejudiced if this opinion were to remain on the books. Pls.' Opp.'n at 13. As the Seventh Circuit noted, the purpose of vacatur is to prevent opinions from having a preclusive effect, not to prevent them from setting precedent. *See Smith*, 964 F.2d at 638. In the same vane, the District of Columbia Circuit has stated that "establishment of precedent argues against vacatur, not in favor of it." *Mahoney v. Babbitt*, 113 F.3d 219, 223 (D.C.Cir.1997). This Court notes at the outset, and the plaintiffs agree, that the December 8, 2003 opinion will have no preclusive effect on the parties in future litigation. *See* Pls.' Opp.'n at 14 (citing *Industrial Bank of Washington v. Tobriner*, 405 F.2d 1321, 1324 (D.C.Cir.1968)) (stating that the findings and conclusions in preliminary injunctions are not preclusive); *see also Mahoney*, 113 F.3d at 224 (noting the limited preclusive value of findings made in granting or denying a preliminary injunction). Additionally, the December 8, 2003 opinion has no precedential value as to the merits of the matters in dispute. The Court's opinion clearly reviews the plaintiffs' claim under the four-prong standard for determining whether the plaintiffs were entitled to injunctive relief. *Mainella*, 294 F.Supp.2d at 50. The opinion is clear that it is only reviewing the claims in assessing their likelihood of success on the merits. Thus, any weight a court would subsequently give to the December 8, 2003 opinion would be based on the procedural context in which it was issued. Furthermore, it is well established that this Court's opinion would not have any precedential effect since a decision by a district court has no precedential effect. This opinion is "not binding on a subsequent court, whether as a matter of stare decisis or as a matter of law of the case." *In re Executive Office of President*, 215 F.3d 20, 24 (D.C.Cir.2000). Thus, this Court attaches no merit to plaintiffs' argument that they will be prejudiced if the December 8, 2003 opinion remains on the books. Again, on this score, the plaintiffs have also failed to meet their burden of demonstrating that vacatur is an appropriate equitable remedy in this case.

Admittedly, this case has not had the benefit of appellate review. While generally this might weigh in favor of vacating the opinion, such is not the case here. As noted above, because the Court issued a ruling only on the motion for preliminary relief, the December 8, 2003 decision will not have preclusive effect. Had this Court issued a final opinion on the merits in the case, the preclusive effect of that opinion would weigh in favor of vacatur. However, because the purpose of vacatur is "to prevent [the opinion] from having a preclusive effect" and this Court's December 8, 2003 opinion will not have that impact, the fact that the District of Columbia Circuit has not ruled on the issue weighs in favor of denying vacatur.

This Court's inquiry does not end here, however, and this Court must finally determine whether it is in the public interest to vacate the December 8, 2003 opinion.

As the Court noted in *Bancorp*, "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *Bancorp*, 513 U.S. at 26, 115 S.Ct. 386. And the District of Columbia Circuit has concluded that "establishment of precedent argues against vacatur, not in favor of it." *Mahoney*, 113 F.3d at 223. The defendant intervenors argue that this case sets strong precedent in interpreting laws in which little has been written. Ints.' Opp.'n at 9–10. This Court agrees that many of the issues addressed in the Court's December 8, 2003 opinion were issues of first impression. This fact actually weighs in favor of denying vacatur from the public interest perspective. *See, e.g., Keeler v. Cumberland*, 951 F.Supp. 83, 84 (D.Md.1997) (denying motion to vacate because it would deprive "the legal community of one of the few reported cases in which the [Religious Freedom Restoration] Act has been held unconstitutional"). And this holds true despite the December 8, 2003 opinion's lack of precedential value, as the opinion does at least reveal one judicial officer's thoughts on several issues of first impression, thus again weighing in favor of denying vacatur. *Cf. Mahoney*, 113 F.3d at 223.

For the foregoing reasons,[4] it is clear that when determining whether equity demands vacatur of the December 8, 2003 opinion, the plaintiffs have failed to meet their burden of persuasion and thus their motion must be denied.[5]

### IV. *Conclusion*

For the foregoing reasons, this Court concludes that this case is now moot. Furthermore, the plaintiffs have failed to meet their burden of establishing that equity weighs in favor of this Court vacating its December 8, 2003 opinion. Therefore, plaintiffs motion for vacatur is denied.

**SO ORDERED** this day of 1st day of September, 2005.[6]

---

4. The defendant intervenors contend that the plaintiffs, by failing to bring a timely lawsuit, created the circumstances which mooted this case. Ints' Opp.'n at 3–4. Specifically, defendant intervenors contend that if the plaintiffs would have filed suit in July 2003 when the regulation in question was first issued, they would have had ample time for full meaningful review by this Court and the District of Columbia Circuit. This Court noted in its December 8, 2003 opinion that it was "troubled" by the late filing in this case, nevertheless, this Court cannot, based upon the information before it, definitively conclude that the plaintiffs' litigation tactics were the reason for the late filing of this case. If this Court were able to determine that the plaintiffs filed this case only days before the black

bear hunt was scheduled to begin to obtain a tactical advantage, it would agree that this voluntary action mooted the case. And this would have surely impacted the vacatur analysis.

5. Because this Court concludes that the plaintiffs have not met their burden of showing why equity demands vacatur, this Court need not address the defendants' and defendant intervenors' contentions that the plaintiffs should have appealed the denial of the temporary restraining order and that failing to do this waived their ability to seek vacatur. Defs.' Reply at 4; Ints' Opp.'n at 6.

6. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.